Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| Alberto L. Vázquez Álvarez y/o Rosa Baerga De Vázquez<br><br>**Querellantes-Recurridos**<br><br>V.<br><br>Bx Decor LLC / Israel Rivera Rosado<br><br>**Querellados-Recurrentes** | TA2025RA00153 | *REVISIÓN ADMINISTRATIVA* procedente del<br><br>Querella Núm.<br><br>SAN-2024-0019086<br><br>Sobre:<br>Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACO) |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero

Hernández Sánchez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de noviembre de 2025.

El 14 de agosto de 2025, BX Decor LLC/Israel Rivera Rosado (en conjunto, los recurrentes) comparecieron ante nos mediante *Revisión Judicial de Determinación Administrativa* y solicitaron la revisión de una *Resolución* que se emitió y notificó el 8 de mayo de 2025, por el Departamento de Asuntos del Consumidor (el DACo). Mediante el aludido dictamen, el DACo ordenó a los recurrentes devolver a la Sra. Rosa Baerga De Vázquez (señora Baerga) la suma de cuatro mil ($4,000.00) dólares, correspondiente al pago efectuado por los productos adquiridos. Además, dispuso que, una vez los recurrentes efectuaran el reembolso, tanto la señora Baerga como su esposo, el Sr. Alberto L. Vázquez Álvarez (señor Vázquez) (en conjunto, los recurridos), debían poner a la disposición de los recurrentes los productos entregados en su residencia.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

I.

El 21 de junio de 2024, los recurridos presentaron la *Querella* Núm. SAN-2024-0019086.[1] Alegaron que, el 24 de mayo de 2024, la señora Baerga le entregó a BX Decor LLC (BX Decor) dos cheques, uno por la cantidad de $2,999.00 y el otro por $1,000.00, para la compra de una batería solar. Indicaron que la compañía sugirió dividir el pago con el fin de evitar el cobro del IVU, bajo la alegación de que existía una exención para productos huracanados. Expusieron que BX Decor aseguró que la batería permitiría mantener encendidos diversos enseres del hogar, como luces, nevera, estufa y aire acondicionado, sin necesidad del servicio eléctrico. Sin embargo, sostuvieron que estas representaciones se hicieron sin inspeccionar la residencia ni verificar los enseres existentes.

Por otro lado, afirmaron que, el día del intercambio de dinero, BX Decor no entregó copia de papeles firmados por la señora Baerga, ni la orientó sobre garantías o derechos del consumidor. Relataron que, el 25 de mayo de 2024, BX Decor, mediante un chofer, realizó la entrega en su residencia de un equipo y un televisor de 55 pulgadas, indicando que la entrega e instalación de una placa solar y una unidad de aire acondicionado se realizaría el 27 de mayo de 2024. Alegaron que, el 31 de mayo de 2024, mientras la señora Baerga se encontraba en recuperación de una cirugía en el hombro izquierdo, personal de BX Decor acudió a la residencia con el propósito de instalar la placa solar y la batería, sin embargo, no llevó la placa.

Así pues, sostuvieron que, el 1 de junio de 2024, llegó un instalador con una "plancha" solar para colocar en el techo, la cual no contaba con base ni método adecuado de instalación, y que se pretendía abrir la losa de cemento para ubicarla. También indicaron

---

[1] Véase, págs. 15-17 del apéndice del recurso, SUMAC TA.

que dicho instalador no pudo identificar la instalación eléctrica de la residencia, la cual tenía facilidades para conexión auxiliar, y no aparentaba ser perito electricista.

Finalmente, expresaron que el instalador abandonó la residencia sin llevarse la placa solar y negándose a retirar la batería y el televisor. Indicaron que le exigieron al representante de ventas la devolución del dinero, ante el incumplimiento en el proceso de entrega e instalación y las dudas surgidas sobre el equipo provisto. Sin embargo, expusieron que al confrontar a la compañía y exigir la devolución del dinero, esta se negó a reembolsar la suma y solo ofreció devolver un 70% del pago, lo que consideraron inaceptable. En vista de lo anterior, argumentaron que la venta era nula, ya que no hubo entrega de copia de un contrato, la entrega de los equipos fue incompleta e inoportuna, y la compañía no estaba debidamente inscrita como contratista de productos solares.

En respuesta, el 29 de abril de 2025, los recurrentes presentaron su *Contestación de Querella.*[2] Alegaron que la señora Baerga realizó el pago de $3,999.00 en dos transacciones con tarjeta ATH Visa débito, una por $2,999.00 y otra por $1,000.00, debido a los límites de la máquina. Indicaron que con dicho pago adquirió una batería portátil Pecron de 2,000 watts, un panel solar, un aire acondicionado de 12,000 BTU de 110V y un televisor de 55 pulgadas, además, de recibir una lámpara negra colgante de obsequio. Expresaron que no se le cargó IVU, ya que los productos solares estaban exentos y la compra correspondió a una oferta "combo" que incluía dichos equipos. Señalaron que actuaron conforme a la Ley y al momento del pago la señora Baerga se llevó la lámpara.

---

[2] Íd., págs. 19-25.

Por otro lado, aseguraron que en ningún momento se le representó a la señora Baerga que la batería portátil tenía la capacidad de energizar todos los equipos de su hogar, sino que se explicó que su uso era limitado a equipos de 110V. Señalaron que equipos como estufas eléctricas y aires acondicionados mayores de 12,000 BTU requerían conexión de 220V, lo cual era incompatible con la batería adquirida. Adujeron que en tres visitas al comercio y, posteriormente, mediante llamada telefónica, se le explicó en detalle a los recurridos el alcance del equipo adquirido.

Asimismo, manifestaron que los productos comprados no constituían un sistema solar que requirieran peritaje. Adujeron que la señora Baerga llamó solicitando información sobre la batería portátil y se le explicó cabalmente el funcionamiento de los productos que adquirió. Asimismo, sostuvieron que la representante de ventas entregó personalmente a la señora Baerga la factura, los recibos de pago, las cláusulas y condiciones firmadas, y la lámpara. Indicaron que, si dichos documentos se extraviaron, no hubiesen tenido inconveniente en reenviarlos. Además, expresaron que todos los productos incluían manuales del manufacturero y las garantías le correspondían al mismo, estando los equipos en perfectas condiciones al momento de la entrega.

En cuanto a la instalación, alegaron que el panel solar adquirido correspondía a una instalación básica que consistía en fijar unas bases al techo, lo cual no requería perito electricista, ya que no implicaba conexiones eléctricas ni trabajos en sistemas auxiliares de la residencia. Afirmaron que el instalador no abandonó la residencia, sino que fue el señor Vázquez quien lo expulsó, exigiendo que se llevara consigo todo. Sostuvieron que la entrega e instalación se realizó dentro de un término razonable de siete (7) días laborables, pero la misma se vio afectada por la indisposición médica de la señora Baerga. Además, adujeron que los recurridos

tuvieron varias oportunidades para aclarar sus dudas en visitas al comercio y mediante llamadas, en las cuales se les explicó y demostró el funcionamiento de los equipos.

Aclararon que nunca se les indicó a los recurridos que debían pagar el 70% de la compra, sino que lo que se ofreció fue pagar el 30%, que únicamente se hacía en casos de financiamiento, ya que como se les había indicado en las cláusulas y condiciones firmadas y entregadas a la señora Baerga, no se realizaba devolución de dinero. Reiteraron que se entregaron los documentos pertinentes, incluyendo factura, recibos y los términos y condiciones al momento de la señora Baerga firmar los documentos y recibos y que si se hubiesen extraviado podían reenviarse. Afirmaron que parte de la mercancía fue entregada al día siguiente de la compra, y que la instalación del aire acondicionado no se completó en la fecha inicialmente pautada porque la señora Baerga notificó que estaría hospitalizada. Puntualizaron que, de no haberse instalado el aire ni el panel hasta la fecha de la querella, ello se debió a la negativa de los recurridos a coordinar dichas instalaciones.

Finalmente, concluyeron que los recurridos comparecieron ante el DACo con manos sucias, incurriendo en abuso del derecho y actuando de mala fe mediante alegaciones frívolas, malintencionadas y carentes de veracidad. Argumentaron que la señora Baerga no había sufrido un daño que se pudiese remediar. Reiteraron que no habían sido negligente, habiendo actuado en todo momento de buena fe y conforme a derecho.

La vista administrativa se celebró el 6 de mayo de 2025. A esta comparecieron los recurridos por derecho propio y en representación de la parte recurrente compareció la Sra. Baleric Robles (señora Robles) en carácter de dueña de BX Decor. Celebrada la vista, el 8 de mayo de 2025, el DACo emitió y notificó una *Resolución* en la cual conforme a la prueba testifical y documental

presentada en la vista, realizó las siguientes determinaciones de hechos[3]:

1. La Sra. Rosa Baerga de Vázquez (en adelante la "Sra. Baerga") estaba interesada en un equipo que le funcionara de respaldo en su residencia cuando se fuera la luz y le cubriera el funcionamiento de los enseres básicos como la luz, la nevera y la estufa.

2. La Sra. Baerga vio un anuncio de la Querellada en la televisión referente a una oferta de una batería solar y se interesó por el producto. La Sra. Baerga se presentó en las instalaciones de la Querellada y obtuvo información al respecto, pero no compró el producto porque entendió discutirlo con su esposo.

3. El 24 de mayo de 2024 la Sra. Baerga se presentó nuevamente en las instalaciones de la Querellada y adquirió un "combo" de: una batería y panel solar 2000, un aire acondicionado de 12,000btu, un TV de 55" a cambio del pago de $4,000.00.

4. El 25 de mayo de 2024 la Querellada entregó en la residencia de los Querellantes la batería y el TV, y le indicó a los Querellantes que había olvidado el panel solar, por lo que se iba a entregar para el día que se hiciera la instalación del sistema.

5. El 27 de mayo de 2024 un instalador de la Querellada se presentó en la residencia de los Querellantes, pero no llevó consigo el panel solar por lo que no pudo llevar a cabo la instalación.

6. El 1 de junio de 2024 un instalador de la Querellada se presentó nuevamente en la residencia de los Querellantes y fue atendido por el Sr. Alberto L. Vázquez toda vez que su esposa, la Sra. Baerga, se encontraba en recuperación de una operación. El Sr. Vázquez preguntó al empleado de la Querellada sobre la instalación y la capacidad de la batería. Ante sus respuestas, el Sr. Vázquez no estuvo de acuerdo con la instalación del equipo porque afectaría la estructura y sistema eléctrico de su residencia y además, el equipo no cumplía con sus necesidades toda vez que la placa y la batería no funcionaba para enseres como la estufa. Siendo así, el instalador dejó la placa y se retiró de la residencia de los Querellantes.

7. Posteriormente el Sr. Vázquez se comunicó con la Querellada y le indicó que no estaban interesados en los productos a lo que la Querellada le indicó que podía ofrecerle la devolución del 30% pero los Querellantes no estuvieron de acuerdo.

8. Ante esto, el 21 de junio de 2024 los Querellantes presentaron la Querella de epígrafe alegando en síntesis una falta de orientación sobre el equipo.

---

[3] Íd., págs. 5-12.

Como remedio los Querellantes solicitan la devolución del dinero.

Analizadas las determinaciones de hechos y conforme al derecho aplicable, el DACo resolvió que se probó que entre las partes se perfeccionó un contrato de compraventa de una batería y un panel solar 2000, un aire acondicionado y un televisor por $4,000.00. Expresó que, el Reglamento Núm. 9158 del 6 de febrero de 2020, conocido como el *Reglamento de Prácticas* Comerciales, no imponía una política específica de devoluciones, pero establecía excepciones que obligaban al comerciante a devolver el dinero cuando el bien no cumplía con el propósito para el cual fue adquirido. Puntualizó que, en este caso, la batería y el panel no satisfacían las necesidades energéticas de los recurridos, pues no podían cubrir entre otros, el funcionamiento de su estufa. Concluyó que dado que estas especificaciones eran técnicas y desconocidas por los recurridos, los recurrentes no podían negarse a la devolución del precio pagado.

En vista de lo anterior, ordenó a los recurrentes devolver a la señora Baerga la suma de cuatro mil ($4,000.00) dólares, correspondiente al pago efectuado por los productos adquiridos. Además, dispuso que, una vez los recurrentes efectuaran el reembolso, tanto la señora Baerga como su esposo, el señor Vázquez, debían poner a la disposición de los recurrentes los productos entregados en su residencia.

Inconforme con este dictamen, el 7 de julio de 2025, los recurrentes presentaron una solicitud de reconsideración.[4] En esta, solicitaron la reconsideración de la *Resolución* alegando que contenía errores sustanciales de hecho y de derecho. Argumentaron que la señora Baerga firmó voluntariamente cláusulas contractuales claras donde se establecía que toda venta era final y no procedía

---

[4] Íd., págs. 26-29.

devolución una vez entregados los equipos. Añadieron que el contrato cumplía con los requisitos de consentimiento, objeto y causa, por lo que tenía fuerza de ley entre las partes según el Código Civil de Puerto Rico. Sostuvieron que el DACo carecía de facultad para anular cláusulas contractuales válidas que no eran abusivas ni contrarias a derecho.

Por otro lado, destacaron que ofrecieron, como remedio extraordinario no requerido por ley, la devolución con un cargo del 30%, oferta que fue rechazada por los recurridos. Asimismo, rechazaron los señalamientos de falta de orientación, señalando que la señora Baerga recibió múltiples explicaciones antes de la compra y firmó los documentos sin alegar engaño ni incapacidad. Plantearon que en todo momento actuaron de buena fe contractual y comercial, y que la interrupción del proceso de instalación fue causada por la actitud hostil del señor Vázquez, quien impidió que se completara el servicio.

Así pues, solicitaron que se revocara la *Resolución* emitida y, se reconociera que: (1) la instalación fue interrumpida por el señor Vázquez y (2) que ofrecieron un remedio razonable conforme a sus políticas. En la alternativa, pidieron que se reconociera que cumplieron con el ofrecimiento y que la solicitud de reembolso total no procedía legalmente.

El 10 de julio de 2025, los recurridos presentaron su oposición a la solicitud de reconsideración.[5] Allí, expresaron que se oponían a la presentación de la solicitud de reconsideración por ser tardía. Expresaron que la *Resolución* del presente caso fue notificada el 8 de mayo de 2025 y que el término de veinte (20) días que disponía la ley para presentar una reconsideración había vencido sin que la parte recurrente actuara. Particularmente, puntualizaron que, la

---

[5] Íd., pág. 31.

solicitud de reconsideración se presentó el 7 de julio de 2025, es decir, más de cincuenta (50) días después, por lo que la hacía claramente fuera de término y carente de jurisdicción. Por estos motivos, solicitaron que la solicitud de reconsideración fuese rechazada de plano.

Evaluados los argumentos de ambas partes, el 15 de julio de 2025, el DACo emitió una *Resolución de Reconsideración* que se notificó el 16 de julio de 2025.[6] En primer lugar, determinó que la solicitud de reconsideración presentada por los recurrentes se presentó dentro del término legal, ya que, aunque la *Resolución* original se emitió el 8 de mayo de 2025, la notificación enviada por correo fue devuelta. Así pues, indicó que, en cumplimiento con el debido proceso de ley, los términos comenzaron a contarse desde la notificación electrónica realizada el 16 de junio de 2025, por lo que el plazo vencía el lunes 7 de julio de 2025, fecha en que se presentó la reconsideración.

En cuanto a los hechos alegados en la solicitud de reconsideración, concluyó que estos carecían de valor probatorio suficiente, pues se basaron en testimonio de referencia de una representante que no participó directamente en la venta. Además, puntualizó que, conforme al *Reglamento de Prácticas Comerciales*, el comerciante no podía negarse a la devolución del precio pagado cuando el bien no cumplía con las representaciones que motivaron la compra o no servían para el propósito adquirido. Resolvió que, en este caso, el producto no cumplía con el propósito para el cual los recurridos lo adquirieron, por lo que reiteró que procedía la devolución del dinero y declaró la reconsideración No Ha Lugar.

---

[6] Íd., págs. 1-3.

Aún en desacuerdo, el 14 de agosto de 2025, los recurrentes presentaron el recurso de epígrafe y formularon el siguiente señalamiento de error:

> **Erró la agencia administrativa, el DACo, al acoger la querella, sin considerar el contrato firmado, así como no tomar en consideración las orientaciones realizadas a la parte querellante.**

Atendido el recurso, le ordenamos a las partes a presentar una copia de la transcripción de prueba oral estipulada. El 26 de septiembre de 2025, los recurrentes presentaron una copia de la transcripción de la prueba oral. Sin embargo, los recurridos no presentaran su posición en cuanto a ésta en el término concedido para ello. Por lo tanto, emitimos una *Resolución* acogiendo la transcripción presentada por los recurrentes como la prueba oral del caso sin objeción de los recurridos.

Por otro lado, le concedimos a los recurridos hasta el 30 de octubre de 2025, para presentar su posición en cuanto al recurso. Vencido el término para ello sin que los recurridos presentaran su postura en cuanto al recurso, damos por perfeccionado el recurso y procedemos a resolver el asunto ante nos. *Veamos.*

## II.

## -A-

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias

administrativas. *Rolón Martínez v. Supte. Policía, supra,* pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan,* 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR,* 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la Ley Núm. 38-2017, según enmendada, mejor conocida como *Ley de Procedimiento Administrativa Uniforme del Gobierno de Puerto Rico* (LPAUG), 3 LPRA sec. 9675.

**-B-**

Las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos lícitos, las acciones u omisiones en la cual medie culpa o negligencia y cualquier otro acto idóneo para producirlas, conforme con el ordenamiento jurídico. Art. 1063 del Código Civil de 2020, 31 LPRA sec.8984. En lo pertinente al asunto ante nos, los contratos son un negocio jurídico bilateral en el cual

dos o más partes prestan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratos son negocios jurídicos desde que las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9772. Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley. Art. 1233 del Código Civil 2020, 31 LPRA sec. 9754.

En lo que compete a esta controversia, entre los contratos que regulan nuestro Código Civil, se encuentra el contrato de compraventa. Conforme lo define el Art. 1274 del Código Civil de 2020, 31 LPRA sec. 9941, es aquel contrato en el que la parte vendedora se obliga a entregar a la parte compradora el dominio de un bien a cambio de un precio cierto por la parte compradora. Es decir, se forma cuando las partes logran un acuerdo respecto a la cosa y al precio, "siendo estos últimos los elementos objetivos o reales de dicho contrato". *Bco. Popular v. Registrador*, 181 DPR 663, 672 (2011).

En virtud de lo anterior, una vez perfeccionado el contrato de compraventa mediante el acuerdo de voluntades sobre la cosa y el precio, nacen para las partes una serie de obligaciones recíprocas cuya fuente es precisamente el vínculo contractual. Así, el Código Civil de 2020 delimita con claridad las responsabilidades de cada parte en dicho negocio jurídico. En primer lugar, el Art.1287, 31 LPRA sec. 9991, impone al vendedor diversas obligaciones esenciales para la validez y eficacia del contrato. Entre ellas, se encuentra la de entregar inmediatamente el bien con sus accesorios, libre de todo gravamen, en el lugar y tiempo convenidos o donde se encuentre el bien al momento del otorgamiento. De igual forma, el vendedor debe transferir al comprador el dominio del bien y

garantizar que este posee las cualidades prometidas, así como que se encuentra libre de defectos que puedan disminuir o destruir su valor o su aptitud para el uso ordinario o pactado. Íd. Esta garantía se presume desde el momento en que el riesgo pasa al comprador, si el defecto se descubre dentro del período de garantía. Íd. Además, el vendedor está obligado a entregar los documentos que acrediten el dominio y proporcionar toda la información relevante sobre el objeto vendido. Íd.

Por su parte, el Art. 1288 del Código Civil de 2020, 31 LPRA sec. 9992, establece las obligaciones que corresponden al comprador, quien debe recibir el bien en el lugar y tiempo convenidos, así como los documentos relacionados con la compraventa. Asimismo, el comprador tiene la obligación de pagar el precio convenido en el momento y lugar acordados, o en el sitio y tiempo en que el bien le sea entregado, según sea el caso. Íd.

Finalmente, en cuanto a la resolución del contrato, el Tribunal Supremo ha establecido que, ante un incumplimiento parcial o defectuoso de una obligación bilateral, procede el ejercicio de la acción resolutoria como remedio jurídico. *Álvarez v. Rivera*, 165 DPR 1, 20 (2005). No obstante, la resolución solo es viable cuando dicho incumplimiento provoca una frustración sustancial de la finalidad contractual. Íd.

**-C-**

La Asamblea Legislativa delegó en el DACo la autoridad para aprobar las reglas y reglamentos necesarios a fin de proteger y vindicar los intereses de los consumidores. *D.A.Co. v. Fcia. San Martin*, 175 DPR 198, 204 (2009). En cumplimiento de dicho mandato, se promulgó el Reglamento Núm. 9158 del 6 de febrero de 2020, conocido como el *Reglamento de Prácticas Comerciales*. En la Regla 9 de dicho reglamento se establecen las políticas públicas relacionadas con la devolución de bienes, disponiéndose, en lo

pertinente, que el comerciante no podrá negarse a reembolsar el precio pagado por el consumidor cuando el bien vendido:

1. adolezca de algún defecto;

2. no cumpla con las representaciones divulgadas que motivaron al consumidor a contratar con el comerciante;

3. no sirva para el propósito para el cual fue adquirido; o

4. cuando, en el proceso de contratación o durante la vigencia de la garantía, se incumplan las disposiciones del reglamento.

A tenor con lo anterior, el reglamento recoge de forma expresa los supuestos en los que el comerciante está impedido de negarse a devolver al consumidor la totalidad del precio pagado por la mercancía.

**III.**

En su único señalamiento de error, los recurrentes argumentaron que el DACo erró al acoger la Querella, sin considerar el contrato firmado, así como no tomar en consideración las orientaciones realizadas a los recurridos. En virtud de ello, nos corresponde determinar si el DACo actuó dentro del marco de sus facultades legales al ordenar la devolución del precio pagado por la señora Baerga por los productos adquiridos.

De entrada, cabe precisar que, de conformidad con la norma reiterada, las determinaciones de hechos basadas en la apreciación de la prueba oral y la credibilidad de los testigos que realizan los organismos administrativos merecen la mayor deferencia judicial, puesto que son éstos quienes tuvieron la oportunidad de observar el comportamiento de los testigos y evaluar directamente su testimonio. Por el contrario, las conclusiones de derecho son revisables en todos sus aspectos. Así pues, si del expediente no surge pasión, prejuicio, parcialidad o error manifiesto, este Tribunal debe validar la determinación administrativa adoptada.

Examinado el expediente administrativo y la transcripción de la prueba oral presentada, no encontramos fundamento para concluir que el DACo actuó de manera arbitraria, ilegal o caprichosa. Por el contrario, la evidencia presentada sustenta razonablemente las determinaciones de hecho y de derecho que dieron base a la *Resolución* impugnada. Del expediente se desprende que la señora Baerga adquirió un "package" compuesto por una batería portátil Pecron de 2,000 W, un panel solar, un televisor y un aire acondicionado de 12,000 BTU, con la expectativa de que la batería sirviera de fuente de respaldo energético para sus enseres esenciales. Sin embargo, la prueba acreditó que el producto no cumplió con ese propósito, pues la batería no podía sostener el funcionamiento de los equipos principales para los cuales fue adquirida.

De igual forma, consta que a la vista administrativa compareció como testigo de los recurrentes la señora Robles, dueña de BX Decor, y no la vendedora que atendió personalmente a la señora Baerga al momento de la transacción. Este hecho resulta significativo, ya que la señora Robles no participó directamente en la compraventa del equipo, por lo que su testimonio se limitó a declaraciones de referencia. El DACo, al evaluar dicha prueba, tuvo la oportunidad de aquilatar su credibilidad y razonablemente concluyó que carecía del peso probatorio necesario para contradecir las alegaciones de los recurridos.

Asimismo, de la evidencia documental surge que el documento titulado "Cláusulas y Condiciones" fue firmado por la señora Baerga en todos sus encasillados, salvo en aquel que contiene la siguiente declaración: "Entiendo que el rendimiento de la batería va a depender de los equipos que son conectados. Entiendo que los enseres tienen diferentes consumos, por lo que el agotamiento de la batería varía por esta razón y no es por

desperfecto de la misma." Si bien reconocemos que los demás encasillados fueron debidamente firmados por la señora Baerga, la ausencia de su firma en este apartado específico reviste particular importancia, pues demuestra que no fue debidamente orientada respecto a las limitaciones técnicas del equipo ni consintió expresamente haber comprendido los factores que podían afectar su rendimiento. Este detalle resulta particularmente relevante en el contexto de la protección al consumidor, ya que la falta de información clara y adecuada sobre las características del bien vendido puede constituir una representación falsa o incompleta que vicia el consentimiento.

Por otra parte, cabe precisar que, la Regla 9 del *Reglamento de Prácticas Comerciales*, supra, dispone que un comerciante no podrá negarse a devolver el dinero pagado por un bien cuando éste adolezca de un defecto, no cumpla con las representaciones que motivaron la compra, o no sirva para el propósito para el cual fue adquirido. Su propósito es garantizar la equidad en las transacciones de consumo y asegurar que el comprador reciba un producto funcional y conforme a lo prometido.

En el presente caso, el DACo correctamente concluyó que BX Decor incumplió con dicha disposición. La prueba acreditó que la batería vendida no cumplió con las representaciones hechas al momento de la venta, ni servía para el propósito esencial que motivó su adquisición. Además, se demostró que la señora Baerga no fue orientada adecuadamente sobre las limitaciones del equipo, lo que impidió que prestara un consentimiento informado. Dichas omisiones constituyen infracciones a los deberes de información y veracidad que impone la reglamentación aplicable, por lo que procede la devolución total del precio pagado.

A la luz de lo anterior, concluimos que el DACo aplicó correctamente el derecho vigente y actuó dentro de su discreción al

determinar que las actuaciones de BX Decor incumplieron con la reglamentación aplicable. La decisión administrativa refleja un ejercicio ponderado de las facultades delegadas por ley y está sustentada en la prueba admitida durante la vista. No se advierte error manifiesto ni desviación de los principios de razonabilidad en la determinación recurrida. Por consiguiente, confirmamos la *Resolución* emitida por el DACo el 8 de mayo de 2025 ya que la agencia actuó conforme a derecho, dentro de los poderes que le fueron delegados, y en armonía con la política pública de protección al consumidor.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones